(50 P.3d 100)

No. 86,624

No. 86,625

STATE OF KANSAS, *Appellee*, v. MICHAEL LEON GORDON and JAMES R. SCRIBNER, *Appellants*.

Opinion filed July 19, 2002.

*Kristen L. Chowning*, assistant appellate defender, and *Randall L. Hodgkinson*, deputy appellate defender, for appellant.

*Steven J. Obermeier* and *Richard G. Guinn*, assistant district attorneys, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before ELLIOTT, P.J., ROGG, S.J., and WAHL, S.J.

WAHL, J.: Defendants Michael Leon Gordon and James R. Scribner separately appeal the district court's rulings extending their probation terms. Each argues that the district court violated his statutory procedural rights by improperly extending probation without holding a hearing and by extending probation beyond the statutory limit of 5 years. Each also contends that the district court violated his constitutional rights by failing to hold a hearing and by basing the extension of probation upon his failure to pay restitution. The two cases have been consolidated for appeal.

While the cases involve many of the same issues, different circumstances and events led to those issues. Hence, the salient facts of each case will be set out separately.

### *State v. Michael Leon Gordon, No. 86,624*

On July 21, 1995, Gordon entered a plea of guilty to a count of attempted theft, a severity level 10 felony. Gordon had a criminal history of "C." The district court sentenced Gordon to an underlying sentence of 9 to 11 months but granted a downward dispositional departure, suspending the prison sentence in favor of 24 months' probation. The condition of probation included the payment of $13,286.69 in restitution payable at the rate of $100 per month beginning on November 1, 1995.

The State moved to revoke Gordon's probation on March 21, 1996. After a hearing on May 2, 1996, the district court granted Gordon's request and reinstated probation for an additional 24 months. Gordon was to make monthly restitution payments.

On May 28, 1998, the State filed a motion to revoke Gordon's probation on the ground that he was delinquent in his restitution payments. On July 10, 1998, a hearing was held on the State's motion. The district court found a violation of the conditions of probation, but again reinstated the probation for an additional 24 months.

By July 10, 2000, Gordon had not completed payments of his restitution and court costs, so the Johnson County Department of Corrections requested an extension of his probation until restitution payments were completed. The district court, without holding

a hearing, ordered that Gordon's probation would continue so long as his restitution was still unpaid.

### *State v. James R. Scribner, No. 86,625*

On October 27, 1994, James R. Scribner entered a plea of guilty to one count of attempted theft, a severity level 10 felony. Scribner had a criminal history of "C." On February 2, 1995, the district court sentenced Scribner to an underlying sentence of 6 months but suspended the sentence in favor of 36 months' probation. One of the conditions of probation was payment of $8,801 in restitution plus court costs, all to be paid in monthly payments of $100.

On May 17, 1996, the court, after a hearing on the State's motion to revoke Scribner's probation, revoked probation, then reinstated probation for an additional 36 months. Again, the court ordered Scribner to make restitution payments of $100 per month.

On June 25, 1996, a bench warrant was executed for Scribner's arrest due to alleged violations of his probation. On October 24, 1997, after a hearing, the court again revoked and reinstated probation, extending it another 36 months. Scribner was ordered to make restitution payments of $100 per month.

On December 17, 1998, the State filed a motion to revoke probation. This motion was later withdrawn at the request of the State. An order to show cause why probation should not be revoked was issued on July 26, 1999, but it was later withdrawn.

On August 25, 2000, Scribner was ordered to appear on a State's motion to extend his probation. On August 28, 2000, based upon a request from the Johnson County Department of Corrections, the district court entered an ex parte order extending Scribner's probation until October 24, 2002, or until he paid the remaining balance of the restitution ordered.

On October 19, 2000, Scribner requested the district court for a discharge from his probation. Gordon followed with his motion for discharge from probation on October 27, 2000. After a joint hearing, the district court denied the motions of both defendants. The defendants appealed and their cases have been consolidated for this appeal.

Although neither the defendants nor the State raises the issue, a review of the record indicates a problem with this court's jurisdiction to consider the appeal. If the record on appeal reveals a potential lack of jurisdiction for the appeal, the appellate court has a duty to question jurisdiction upon its own initiative. *State v. Snodgrass*, 267 Kan. 185, 196, 979 P.2d 664 (1999). The existence of jurisdiction is a question of law over which an appellate court has unlimited review. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000).

After the State moved to revoke Gordon's probation, the district court reinstated the probation for 24 months on May 2, 1996. Gordon's term of probation ended on May 2, 1998. The State did not file its next motion to revoke probation until May 28, 1998.

For a district court to retain jurisdiction to revoke probation, the revocation proceedings must be initiated within the probation period. In *State v. Ferguson*, 271 Kan. 613, 617, 23 P.3d 891 (2001) (citing *State v. Williams*, 20 Kan. App. 2d 142, 884 P.2d 743 [1994]), the Supreme Court stated: "[I]t is well established in Kansas that a trial court has jurisdiction to revoke probation as long as the proceedings are started before expiration of the probation term." Such revocation proceedings are initiated by the filing of a warrant, petition, motion, or show cause order seeking the revocation of probation.

The motion to revoke Gordon's probation was not filed within the probation period. The district court lost jurisdiction to revoke and reinstate Gordon's probation as of May 2, 1998. Any subsequent order pertaining to Gordon's probation is void ab initio. *State v. Farmer*, 16 Kan. App. 2d 419, 422, 824 P.2d 998 (1992).

The State argues that the case against Gordon was saved by K.S.A. 22-3716(d), which provides:

"The court shall have 30 days following the date probation, assignment to a community correctional service program, suspension of sentence or a nonprison sanction was to end to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation, assignment to a community correctional service program, suspension of sentence or a nonprison sanction."

Upon a cursory reading, the Supreme Court holding in *Ferguson* appears to be in direct conflict with this statute, but they are wholly

compatible. The pleading seeking the revocation of a defendant's probation must be filed during the term of the probation. The court then has 30 days after the termination of the probationary period to cause the defendant to appear for a hearing. The State, however, may not wait to file for the revocation following the end of the term of probation.

Turning to Scribner's appeal, although he divides his arguments that K.S.A. 2001 Supp. 21-4611(c) provides for a hearing and limits the duration of probation to a specified maximum term into two separate issues, both arguments involve the construction of the statute and will be addressed together. Interpretation of a statute is a question of law over which this court has unlimited review. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000). Pertinent parts of K.S.A. 2001 Supp. 21-4611 read as follows:

"(c) For all crimes committed on or after July 1, 1993, the duration of probation in felony cases sentenced for the following severity levels on the sentencing guidelines grid for nondrug crimes and sentencing guidelines grid for drug crimes is as follows:

. . . .

(3) In felony cases sentenced at severity levels 9 and 10 on the sentencing guidelines grid for nondrug crimes and severity level 4 on the sentencing guidelines grid for drug crimes, if a nonprison sanction is imposed, the court shall order the defendant to serve a period of probation, or assignment to a community correctional services program as provided under K.S.A. 75-5291 *et seq.*, and amendments thereto, of up to 12 months in length.

. . . .

(5) If the court finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation terms provided in subsections (c)(3) and (c)(4), the court may impose a longer period of probation. Such an increase shall not be considered a departure and shall not be subject to appeal.

(6) Except as provided in subsections (c)(7) and (c)(8), the total period in all cases shall not exceed 60 months, or the maximum period of the prison sentence that could be imposed whichever is longer. Nonprison sentences may be terminated by the court at any time.

(7) If the defendant is convicted of nonsupport of a child, the period may be continued as long as the responsibility for support continues. If the defendant is

ordered to pay full or partial restitution, the period may be continued as long as the amount of restitution ordered has not been paid.

(8) The court may modify or extend the offender's period of supervision, pursuant to a modification hearing and a judicial finding of necessity. Such extensions may be made for a maximum period of five years or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term.

"(d) The provisions of subsection (c), as amended by this act, shall be applied retroactively. The sentencing court shall direct that a review of all persons serving a nonprison sanction for a crime in severity levels 8, 9 or 10 of the sentencing guidelines grid for nondrug crimes or a crime in severity levels 3 or 4 of the sentencing guidelines grid for drug crimes be conducted. On or before September 1, 2000, the duration of such person's probation shall be modified in conformity with the provisions of subsection (c)."

K.S.A. 2001 Supp. 21-4611 establishes the framework upon which a district court imposes probation. Subsections (c)(1) and (c)(2) provide recommended probation terms for specified offenses. While a district court may impose a greater period of probation than the recommended term identified by these subsections, such a deviation from the recommended term is deemed a departure requiring the court to state, on the record, substantial and compelling reasons for the deviation from the recommended term. *State v. Whitesell*, 270 Kan. 259, 292-93, 13 P.3d 887 (2000).

Under the amendments to the statute implemented in May 2000, however, a district court may impose greater periods of probation for severity levels 8, 9, and 10 nondrug felony offenses and for severity levels 3 and 4 felony drug offenses upon a finding on the record "that the safety of the members of the public will be jeopardized or that the welfare of the inmate will not be served by the length of the probation terms." K.S.A. 2001 Supp. 21-4611(c)(5).

Subsection (c)(7), dealing with the extension of probation to accommodate the payment of restitution, existed prior to the May 2000 amendments in former subsection (c)(4). The legislature could easily have amended the provision dealing with restitution to foreclose an appeal as it did with subsection (c)(5) but it chose to leave (c)(7) untouched.

A fundamental maxim of statutory construction is that where an amendment to a statute revises an existing provision, the courts

construing the amendments should presume that the legislature intended to change the law. *Kaul v. Kansas Dept. of Revenue*, 266 Kan. 464, 471, 970 P.2d 60 (1998), *cert. denied* 528 U.S. 812 (1999). The corollary of that proposition is also true. Where the unambiguous language of the statute restricts an amendment to certain provisions within a statute and leaves other provisions unchanged, courts should presume that the legislature intended the effect of the unchanged provisions to be given the same effect they had been given prior to the effective date of the amendment.

This proposition is supported by the fundamental rule of statutory construction that the legislature is presumed to have expressed its intent through the language of the statutory scheme enacted. A court must give effect to the intent of the legislature expressed through the unambiguous language of the statute. *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

Since (c)(7) remains unmodified by the 2000 amendment and since the legislature did not tie subsection (c)(7) to subsection (c)(5), it appears the legislature did not intend the jurisdictional limitations of subsection (c)(5) to apply when probation is extended to accommodate child support or restitution payments. The clear intent of the legislature was to provide the court with the authority to extend probation in all cases wherein restitution is ordered as a part of probation, not just those cases falling within the parameters of subsections (c)(3) and (c)(4).

Scribner argues that the statute provides for a hearing prior to the extension of probation for failure to complete restitution payments within the original probation term. We agree. Subsection (c)(8) specifically requires a "modification hearing and a judicial finding of necessity" for extensions of the probation. However, by the time the trial court entered the ex parte order extending Scribner's probation until the restitution was paid, there was no real reason to bother. Scribner was first placed on probation on February 2, 1995. His probation ended on February 2, 2000. The order extending his probation for the payment of restitution was entered on August 28, 2000,—6 months and 26 days too late and without a hearing.

When the district court originally sentenced the defendants in 1995, it could have properly set their probation at 5 years or it could have imposed an indefinite probation period pending the payment of restitution. At any time prior to the expiration of their probation terms and after proper notice and hearing, the probation periods could have been extended to accommodate the payment of the restitution ordered. In each case, the restitution extension was made too late and/or without a hearing.

The orders of the district court in both cases which purported to extend the probation of both defendants for payment of restitution were void because they were entered after the probation periods had terminated.

Both appeals are dismissed; cases remanded with directions.